IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOAN S. GILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO.  04-918-WDS |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Plaintiff, Joan S. Giller, seeks judicial review of a final decision of the Commissioner of Social Security denying her December 2001, application for supplemental security income. Giller's application was rejected following an administrative determination that she was not disabled. That decision became final when the Appeals Council declined to review a decision reached by an Administrative Law Judge (ALJ).

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3). To receive supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. § 416.920. The Commissioner

must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id*.

At the time of the ALJ's decision, plaintiff was 44 years old. She had a tenth grade education without specialized training or recent work experience.

The ALJ evaluated plaintiff's application through Step 5 of the sequential analysis and concluded that plaintiff had medically determinable impairments that were severe (arthritis of the lumbar spine with radiculopathy, varicose veins, and hypothyroidism) as well as non-severe (depression). The ALJ decided that these impairments did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ assessed plaintiff's residual functional capacity, finding that she retained the ability to perform a reduced range of light work, and decided that she was not disabled because she could perform a significant number of housekeeping, laundry/dry cleaning, surveillance monitoring, assembling, and production inspecting jobs (R. 12-18).

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making

independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### I.   Development of the Administrative Record - Physical Impairments

In seeking an award of benefits or remand for further proceedings, plaintiff argues that the ALJ failed to fully develop evidence regarding her physical condition. In response, defendant notes that plaintiff bears the burden of providing detailed medical records describing her impairments.

The ALJ gathered records created between August 1996, and January 2004. Most of the records were prepared by Dr. Small, plaintiff's treating physician. Those records are summarized below.

In January 2003, plaintiff described a radiating, tingling pain in her neck, arms, and legs; numbness in her hand; headaches; blurred vision; and some difficulty swallowing. She said that a doctor suspected multiple sclerosis several years earlier. Dr. Small observed a mild limp in her gait but no foot drop and found that plaintiff had good grip strength. He prescribed medication and ordered magnetic imaging (R. 238-39). When plaintiff returned, she reported tingling and weakness in her right leg and arm. Dr. Small observed that her right leg appeared less strong when she climbed onto the exam table. Her gait was slow but bipedal. Her MRI showed one area of white matter disturbance and defects in the cervical portion of her spine. He assessed right arm and leg radiculopathy, finding no clear cut evidence of multiple sclerosis. He prescribed anticonvulsant medication (R. 236-37).

In February 2003, plaintiff reported a headache and knee, arm, and leg pain. She said it was

hard to swallow at times and denied loss of hand grasp. Dr. Small detected tenderness over the right paraspinal muscles and tenderness over the center of the lumbar spine and observed right leg weakness with a limp. He assessed radiculopathy and prescribed pain relief medication (R. 234-35).

In April 2003, plaintiff described a headache and blurred vision. Dr. Small noted that she continued to limp and that the strength in her right hand had decreased. Dr. Small assessed radiculopathy and an exacerbation of multiple sclerosis causing visual change. He prescribed medication (R. 230-31). When plaintiff returned later that month, she reported pain, symptoms on her left side, and muscle cramping. She said she had fallen and could not hold a cup. Dr. Small described her mood as depressed, detected an ability to grasp with some firmness, and decreased pinch grip. He thought she either had a flare-up of multiple sclerosis or some other neurologic disorder and dysphagia. He continued her medication and referred her to a neurologist (R. 228-229).

In June 2003, Dr. Small evaluated plaintiff's symptoms of head, neck, shoulder, arm, and low back pain, along with her swallowing difficulty and hand weakness. He observed decreased hand grip strength on the right but thought the hand was still useful. He noted that plaintiff's voice was hoarse and that her lymph nodes were enlarged. He ordered tests, epidural treatment, and referred her to Dr. Shaw for further evaluation (R. 225-26).

In July 2003, Dr. Shaw interpreted a swallow test as normal (R. 242).

In October 2003, Dr. Small evaluated plaintiff's symptoms of hand and elbow stiffness, shoulder pain, joint pain, leg numbness, and swelling in the knees. He noted foot drop, a compensatory gait, joint tenderness at the hands and elbows, and full range of motion in the shoulder. He assessed lumbar radiculopathy with foot drop and multiple joint arthritis (R. 221-22).

In December 2003, Dr. Small evaluated plaintiff's symptoms of shortness of breath, muscle pain and cramping, leg numbness, weakness, difficulty swallowing, and throat discomfort. Plaintiff

reported that she ate soft food and dropped items. Dr. Small determined that her pinch and grip strength remained weak and ordered a swallowing study (R. 219-20).

In January 2004, Dr. Small reviewed the results of the swallowing study and determined that plaintiff had no mechanical swallowing problem (R. 240).

In May 2004, plaintiff testified at the evidentiary hearing. She explained that Dr. Small planned to prescribe medication for multiple sclerosis (R. 265).

The ALJ also gathered records from Drs. Small, Nemani, Pearson, Shah, Myers, and Gupta. In addition, she gathered information about plaintiff's daily activities, pain, fatigue, and medications (R. 73-78, 80-88, 98, 121-153, 160-247). She also referred plaintiff to Drs. Klug and Charnond for consultive examinations (R. 154-159).

Plaintiff points to the signs and symptoms described in Dr. Small's reports and notes the absence of a definitive diagnosis of multiple sclerosis. Because Dr. Small was still evaluating her condition when the hearing was conducted, plaintiff believes the ALJ should have asked Dr. Small to submit records from future office visits and arranged for plaintiff to undergo further evaluation and testing by a consultative examiner.

ALJs have a duty to develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Because plaintiff was represented by counsel during the administrative proceedings, the ALJ was entitled to assume that she presented her strongest case for an award of benefits. *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir.1987). Speculation that additional information might have been obtained will not ordinarily support a request for a remand. Rather, plaintiff must point to specific facts that were not brought out in the hearing. In other words, a significant omission must be shown before the Court will find that the administrative record is not full and fair. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994); *Nelson v. Apfel*, 131 F.3d 1228, 1235

(7th Cir. 1997).

Plaintiff has not submitted or described treatment records created after the May 2004, hearing. Also, she does not identify specific tests or examinations which, if performed, would have helped the ALJ determine whether her physical condition was disabling. Hence, her argument for remand rests on pure speculation. Moreover, the ALJ obtained medical reports that discuss plaintiff's physical ailments in terms of clinical findings, laboratory findings, diagnosis, and treatment efforts. The ALJ rationally determined that she had enough information to evaluate plaintiff's physical condition. Remand for further development of the record is unwarranted.

## II.   Assessment of Medical Opinion Evidence

Plaintiff also challenges the ALJ's assessment of Dr. Small's opinion, claiming that the ALJ should have given the opinion controlling weight (Doc. 16, pp. 7-8). Defendant responds that the weight accorded to medical opinion evidence should not be reconsidered.

On May 2, 2002, Dr. Graham opined that plaintiff could lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and use her extremities to push and pull (R. 99-106). On January 14, 2003, Dr. Bruce Donnelly affirmed Dr. Graham's opinion (R. 99).

On May 12, 2004, Dr. Small opined that plaintiff could lift and/or carry less than 10 pounds occasionally and frequently and stand and/or walk less than 2 hours in an 8-hour workday. He thought she needed to alternate between sitting, standing, and reclining; could never climb, balance, kneel, crouch, crawl, or stoop; could occasionally reach, handle, finger, and feel; and had a limited ability to push and/or pull with her extremities. Dr. Small's comments show that he reached his opinion after considering plaintiff's statements about her limitations and clinical and laboratory diagnostic techniques (R. 245-46).

The ALJ considered Dr. Small's opinion and the opinions of Drs. Graham and Donnelly, giving considerable weight to the opinions of the reviewing physicians and insignificant weight to Dr. Small's opinions (R. 16).

Plaintiff argues that Dr. Small's opinion deserved controlling weight. She believes the opinion was supported by objective evidence, pointing to Dr. Nemani's impression of mild to moderate radiculopathy and Dr. Gupta's impression of chronic low back pain with radiculopathy secondary to small herniated nucleus pulposus at L3-4 and L4-5 (R. 198, 213).

ALJs must give controlling weight to a treating source's opinion on the nature and severity of an impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 416.927(d)(2). In *Stephens v. Heckler*, 766 F.2d 284, 288-89 (7th Cir.1985), the Seventh Circuit Court of Appeals stated that ALJs are free to weigh the relative merits of the opinions presented by consulting specialists on the one hand and treating physicians on the other hand, subject only to the substantial evidence rule.

While the findings reported by Drs. Gupta and Nemani might lend some support to Dr. Small's opinion, the ALJ did not err by reducing the weight accorded to this opinion on the ground that the opinion was partly based on plaintiff's description of her limitations. *See Smith*, 231 F.3d at 440 (affirming ALJ's rejection of treating physician's opinion supported only by applicant's subjective complaints). Moreover, portions of Dr. Small's opinion conflicted with other substantial evidence, namely the opinions of Drs. Graham and Donnelly. Under these circumstances, the ALJ was not obligated to give Dr. Small's opinion controlling weight.

Plaintiff generally argues that the ALJ failed to properly weigh all of the evidence. One of

the legal rules governing social security determinations is that ALJs must consider all relevant evidence and may not select and discuss only that evidence that favors an ultimate conclusion. *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993) (ALJ must weigh all credible medical evidence).

Plaintiff points to Dr. Gupta's report describing objective medical evidence of moderate degenerative joint disease and small nuclear herniations at the L3-4 and L4-5 levels of her spine (R. 213). The record shows that the ALJ considered this evidence along with other reports describing her physical condition and decided that the evidence did not support her testimony regarding her symptoms and limitations (R. 15). The Court is not persuaded that the ALJ ignored evidence favoring a finding that she was disabled.

### III.     Assessment of Plaintiff's Credibility

Plaintiff also argues that the ALJ erred in discrediting her hearing testimony (Doc. 16, p. 8). In support of this argument, she states that the ALJ failed to properly weigh all of the medical evidence.

The parties were directed to file briefs that contain a discussion of the relevant law and a discussion of the important facts, with appropriate citation to the administrative record (Doc. 8). Because a challenge to the ALJ's credibility assessment was not developed in accordance with the Court's legitimate requirement, the argument is deemed waived. *See Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534 (7th Cir. 1992) (a reviewing court need not devote its time to arguments raised in a very opaque manner).

The argument also fails on the merits. The ALJ discounted plaintiff's testimony after finding discrepancies between her statements and conduct and other portions of the administrative record (R. 15). The ALJ's evaluation of the hearing testimony was not patently wrong. *Powers v. Apfel*,

207 F.3d 431, 435-36 (7th Cir. 2000).

### IV.   Development of the Administrative Record - Mental Impairments

Plaintiff argues that the ALJ did not properly develop the record regarding her mental impairment (Doc. 16, pp. 8-10).  Defendant argues that the ALJ properly developed the record and considered relevant evidence (Doc. 17, pp.18-20).

In February 2002, Dr. Klug reviewed records and interviewed the plaintiff.  In describing plaintiff's background information, he related plaintiff's report of a history of mental health treatment, including one hospitalization, outpatient therapy, and psychotropic medications.  He diagnosed "Major Depressive - Severe with Psychotic Features" (R. 155-57).

On April 22, 2002, a daily activity report was prepared by a neighbor who said she had known plaintiff for 20 years.  The neighbor reported that plaintiff had no history of psychiatric counseling or hospitalizations or mental health issues that would keep her from working.  She said plaintiff got along well with most people and was able to concentrate well but had some problems with her memory (R. 77-78).

On April 30, 2002, Drs. Ryans and Brister reviewed the record and reported their opinions that plaintiff did not have a severe mental impairment (R. 107).

In December 2002, Dr. Small reported that he was not treating plaintiff for a mental impairment.  He said she was well-oriented and her memory and speech were intact.  He did not assess any restrictions on plaintiff's mental ability to perform work (R. 174).

In January 2003, Dr. Brister affirmed his earlier assessment of plaintiff's mental condition (R. 107).

In May 2004, plaintiff testified that Dr. Small had taken her off of medication for depression

because of the other medications she was taking. She said she was extremely depressed and planned to start a weekly counseling program (R. 262-63).

The ALJ decided that plaintiff's depression had a minimal impact on her ability to perform work-related functions and found mild restrictions on some aspects of her mental ability to work. The ALJ also decided that plaintiff was limited to unskilled work with a special vocational preparation rating of one or two and excluded fast-paced production work (R. 14-15).

The record shows that information regarding plaintiff's mental condition was adequately developed. Moreover, the ALJ's discussion and findings shows that evidence regarding plaintiff's mental impairment was considered when the ALJ decided that plaintiff retained the ability to perform a substantial number of jobs.

## V.     Conclusion

Based on the foregoing, the Commissioner's final decision regarding Joan S. Giller's December 2001, application for supplemental security income is **AFFIRMED**.

**IT IS SO ORDERED.**

**Dated:  March 28, 2006**

                                    **s/   WILLIAM D. STIEHL**
                                        **DISTRICT JUDGE**